**ORAL ARGUMENT SCHEDULED FOR FEBRUARY 19, 2020**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 19-5104

---

PHYSICIANS FOR SOCIAL RESPONSIBILITY, *et al.*,
*Appellants*,

v.

ANDREW WHEELER, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, IN HIS OFFICIAL CAPACITY,
*Appellee*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CASE NO. 1:17-CV-02742-TNM (THE HON. TREVOR N. MCFADDEN)

---

# FINAL REPLY BRIEF OF APPELLANTS

**DATED: December 18, 2019**

Michael Burger
Special Counsel
Columbia Environmental Law Clinic
Morningside Heights Legal Services
435 W. 116th St.
New York, NY 10027
(212) 854-2374
mburger@law.columbia.org

*Counsel for Appellants Joe Árvai and Robyn Wilson*

Neil Gormley
Tosh Sagar
Earthjustice
1625 Massachusetts Ave., NW
Suite 702
Washington, DC 20036-2243
(202) 667-4500
ngormley@earthjustice.org
tsagar@earthjustice.org

*Counsel for Appellants Physicians for Social Responsibility, National Hispanic Medical Association, International Society for Children's*

*Health and the Environment, and*
*Edward Lawrence Avol*

Patti Goldman
Earthjustice
705 Second Avenue
Suite 203
Seattle, WA 98104
(206) 343-7340
pgoldman@earthjustice.org

*Counsel for Appellants Physicians for Social Responsibility, National Hispanic Medical Association, International Society for Children's Health and the Environment, and Edward Lawrence Avol*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iv

GLOSSARY OF ACRONYMS AND ABBREVIATIONS ........ viii

SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 3

I. EPA EXCEEDED ITS STATUTORY AUTHORITY AND ACTED CONTRARY TO LAW BY ISSUING A DIRECTIVE THAT CONFLICTS WITH THE UNIFORM ETHICS RULES. ........ 3

A. The Directive Conflicts With The Uniform Ethics Rules. ........ 3

B. The Directive is Legally Binding. ........ 5

C. The Directive Contravenes the Uniformity Requirement of Federal Ethics Law. ........ 6

a) The Ethics Rules Apply Uniformly. ........ 6

b) The Directive Addresses Conduct and Subject Matter Covered by the Uniform Ethics Rules. ........ 8

II. THE DIRECTIVE IS PROCEDURALLY DEFECTIVE. ........ 11

III. THE DIRECTIVE IS ARBITRARY AND CAPRICIOUS. ........ 17

A. EPA Failed to Consider The Uniform Ethics Rules. ........ 17

B. EPA Failed to Consider The Risk that Barring EPA Grantees Will Impair Its Ability to Recruit Needed Expertise. ........ 17

C. EPA Failed to Acknowledge or Explain the Reversal of its Longstanding Policy. ........ 20

IV. THE DIRECTIVE IS REVIEWABLE. ........ 23

CONCLUSION ........ 28

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ........ 30

CERTIFICATE OF SERVICE ........ 31

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Atlantic City Elec. Co. v. FERC*,
295 F.3d 1 (D.C. Cir. 2002) ........ 15

*Autor v. Pritzker*,
843 F.3d 994 (D.C. Cir. 2016) ........ 11

* *Ball, Ball & Brosamer v. Reich*,
24 F.3d 1447 (D.C. Cir. 1994) ........ 12, 13, 15

*Camp v. Pitts*,
411 U.S. 138 (1973) ........ 19

* *CBS Corp. v. FCC*,
785 F.3d 699 (D.C. Cir. 2015) ........ 20, 21

* *De Jesus Ramirez v. Reich*,
156 F.3d 1273, 1276 (D.C. Cir. 1998) ........ 13

* *Department of Commerce v. New York*,
139 S. Ct. 2551 (2019) ........ 25, 27

*Dunlop v. Bachowski*,
421 U.S. 560 (1975) ........ 24

*Erickson v. Pardus*,
551 U.S. 89 (2007) ........ 5

* *FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ........ 22

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010) ........ 15

*Hatch v. FERC*,
654 F.2d 825 (D.C. Cir. 1981) ........ 21

** Authorities upon which we chiefly rely are marked with astersisks.*

*Heckler v. Chaney*,
470 U.S. 821 (1985)....................24

*Helicopter Ass'n Int'l v. FAA*,
722 F.3d 430 (D.C. Cir. 2013)....................14

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019)....................15

*Lincoln v. Vigil*,
508 U.S. 182 (1993)....................24

*Meyer v. Bush*,
981 F.2d 1288 (D.C. Cir. 1993)....................15

* *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*,
463 U.S. 29 (1983) ....................18, 22

*PanAmSat Corp. v. FCC*,
198 F.3d 890 (D.C. Cir. 1999)....................19

*Public Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*,
886 F.2d 419 (D.C. Cir. 1989)....................27

*Shieldalloy Metallurgical Corp. v. Nuclear Regulatory Comm'n*,
707 F.3d 371 (D.C. Cir. 2013)....................21

*In re Surface Mining Regulation Litigation*,
627 F.2d 1346 (D.C. Cir. 1980)....................15

*Webster v. Doe*,
486 U.S. 592 (1988)....................24

*Weyerhaueser, Co. v. U.S. Fish & Wildlife Serv.*,
139 S. Ct. 361 (2018)....................28

*Williams Gas Processing-Gulf Coast Co., L.P. v. FERC*,
475 F.3d 319 (D.C. Cir. 2006)....................21

**STATUTES**

5 U.S.C. App. 2 § 7(c)....25

* 5 U.S.C. App. 4 § 402....7

5 U.S.C. App. 4 § 402(a)....7

5 U.S.C. App. 4 § 402(b)(1)....7

5 U.S.C. App. 4 § 402(b)(12)....7

5 U.S.C. App. 4 § 402(f)(2)(A)(ii)(I)....9

5 U.S.C. § 701(a)(2)....28

5 U.S.C. § 702....14

5 U.S.C. § 706....14, 19

5 U.S.C. § 7301....11

* 18 U.S.C. § 208....6

18 U.S.C. § 208(a)....6

18 U.S.C. § 208(d)(2)(B)....6

**LEGISLATIVE HISTORY**

S. Rep. No. 87-2213 (1962), *as reprinted in* 1962 U.S.C.C.A.N. 3852....6

161 Cong. Rec. H10,161, H10,220 (daily ed. Dec. 17, 2015)....23

**REGULATIONS**

5 C.F.R. § 2635.102(g)....9

* 5 C.F.R. § 2635.105....8, 11, 14

5 C.F.R. § 2635.106(a)....................9
5 C.F.R. § 2635.106(c)....................15, 16
5 C.F.R. § 2635.402(a)....................11
5 C.F.R. § 2635.402(b)(1)....................4
5 C.F.R. § 2635.402(c)....................4
5 C.F.R. § 2635.402(d)(1)....................4
* 5 C.F.R. § 2638.602....................7, 11, 14, 16
5 C.F.R. § 2640.203(g)....................4, 11
41 C.F.R. part 102-3, subpt. C, App. A....................8

**FEDERAL REGISTER NOTICES**

28 Fed. Reg. 985 (Feb. 1, 1963)....................6
46 Fed. Reg. 2582 (Jan. 9, 1981)....................14
57 Fed. Reg. 35,006 (Aug. 7, 1992)....................7, 14
60 Fed. Reg. 47,208 (Sept. 11, 1995)....................4
75 Fed. Reg. 35,955 (June 18, 2010)....................11

## GLOSSARY OF ACRONYMS AND ABBREVIATIONS

Pursuant to D.C. Circuit Rule 28(a)(3), the following is a glossary of uncommon acronyms and abbreviations used in this brief.

| | |
|---|---|
| APA | Administrative Procedure Act |
| Committee Act | Federal Advisory Committee Act |
| EPA | United States Environmental Protection Agency |
| Ethics Office | The Office of Government Ethics |
| FAC | Plaintiffs' First Amended Complaint |

## SUMMARY OF ARGUMENT

This case challenges an across-the-board disqualification of EPA grant recipients from serving on EPA's scientific advisory committees, which EPA admits is intended to address alleged conflict-of-interest concerns. The Office of Government Ethics ("Ethics Office") has issued uniform ethics rules for the executive branch establishing that these grants do not create a disqualifying conflict of interest, and EPA's Directive conflicts with those rules. EPA also failed to consult with the Ethics Office, or even to consider the Ethics Office's contrary expert determination, despite a regulation requiring EPA to obtain the Ethics Office's prior approval for ethics-related requirements. Further, EPA nowhere acknowledged its own consistent prior practice of heeding the Ethics Office rules, nor considered whether disqualifying all EPA grantees would impair EPA's ability to recruit needed expertise. For each of these reasons, EPA's overbroad and unnecessary Directive is unlawful.

EPA defends the Directive by seeking to characterize the disqualification as addressing a different subject—EPA's appointment authority—even though the uniform ethics rules have expressly been made applicable to EPA's appointments to its advisory committees. Moreover, EPA's invocation of its discretion to balance multiple factors in individual appointment decisions and in forming committees is off-point, as Scientists in no way challenge any individual appointments or the

make-up of any advisory committee. Instead, they challenge an across-the-board disqualification that bars what the Ethics Office permits and marks a sharp departure from EPA's past practice. Contrary to EPA's argument that the disqualification is not binding, the plain text of the Directive and the accompanying memorandum describe the disqualification as a "requirement" that "shall" be applied, and EPA has, in fact, treated the Directive as binding in screening and dismissing scientists from its advisory committees. And in arguing that the uniform ethics rules establish a floor, EPA ignores the uniformity mandate of federal ethics statutes and regulations, which is reinforced by the requirement to obtain the Ethics Office's concurrence for supplemental requirements, and also ignores the Ethics Office's authoritative interpretation of the uniformity mandate.

EPA argues that the Directive is "committed to agency discretion," but does not—and could not—argue that its compliance with federal ethics law is committed to its discretion. Far from granting complete and unreviewable discretion in ethics matters to EPA, Congress has entrusted authority to the Ethics Office to issue uniform ethics rules for the executive branch. Both the Ethics Office, under the federal ethics laws, and the General Services Administration, under the Federal Advisory Committee Act ("Committee Act"), have issued rules requiring EPA to apply the uniform ethics rules in the management of its advisory committees, and courts can therefore review whether EPA's decision comports

with these requirements. Indeed, the district court decided and EPA addresses the merits of Scientists' claim that the directive violates the ethics rules that constrain EPA's discretion, finding ample law to apply. In addition to presenting a direct violation of these legal requirements, Scientists claim that EPA acted arbitrarily and capriciously in reversing its longstanding adherence to the ethics rules. This claim is not free-standing, but rather tethered to the legal requirements EPA admits provide meaningful judicial standards.

Further, EPA does not dispute that multiple laws require EPA to ensure that appointees to its scientific advisory committees are scientifically qualified, thus placing limits on EPA's discretion to adopt rules that would impair that expertise. Because Congress has placed limits on EPA's discretion in the management of scientific advisory committees, the Court can review not only whether EPA contravened express requirements, but also whether EPA acted arbitrarily.

## ARGUMENT

### I. EPA EXCEEDED ITS STATUTORY AUTHORITY AND ACTED CONTRARY TO LAW BY ISSUING A DIRECTIVE THAT CONFLICTS WITH THE UNIFORM ETHICS RULES.

#### A. The Directive Conflicts With The Uniform Ethics Rules.

Although EPA asserts that the Directive is "harmonious[]" with the uniform ethics rules, EPA Br. 27, EPA does not dispute that the rules establish that the risk of a conflict of interest from committee members' interest in EPA grants is too

remote or too inconsequential to warrant disqualification. *See* Opening Br. 26-30. Under the uniform ethics rules, employees are disqualified from participating only in "particular matter[s]" in which they have financial interests. 5 C.F.R. § 2635.402(c). Even then, disqualification is required only when participation will have "a direct and predictable effect on" the employee's financial interest, which requires a "close causal link" and a "real, as opposed to a speculative possibility" that the matter will affect the financial interest. *Id.* § 2635.402(b)(1), (c). Moreover, the uniform ethics rules expressly address the financial interests of advisory committee members and establish that that they are not disqualifying "provided that the matter will not have a special or distinct effect on the employee or [his or her] employer other than as part of a class." *Id.* §§ 2640.203(g), 2635.402(d)(1). The risk of a conflict of interest, according to the Ethics Office, is "too remote or too inconsequential" to warrant disqualification. *Id.* § 2635.402(d)(1); 60 Fed. Reg. 47,208, 47,208 (Sept. 11, 1995), JA0225.

The Directive conflicts with these uniform ethics rules because it establishes, on the basis of an alleged ethical concern, EPA Br. 47-48, an across-the-board disqualification of all EPA grant recipients from participation on any EPA scientific advisory committee.

### B. The Directive is Legally Binding.

EPA claims that the Directive does not create a binding requirement, but merely principles, priorities, or factors. EPA Br. 27, 30. The Directive on its face, however, creates legally binding obligations. Although the Directive describes those obligations as "principles and procedures," it uses mandatory language in instructing that "[m]embers shall be independent from EPA," which "shall include a requirement that no member of an EPA federal advisory committee be currently in receipt of EPA grants." FAC Ex. A 1 ("Directive"), JA0091 (emphasis added). Further, Scientists' factual allegations—which at this stage must be accepted as true—demonstrate that the Directive imposes a binding requirement. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); FAC ¶ 116 ("The . . . [D]irective makes [Scientists] ineligible for service on EPA advisory committees if they receive grant funding."); *id.* ¶ 118 ("It would be futile for scientists who are interested in serving on EPA advisory boards, but do not currently serve, to seek appointment while in possession of an agency grant."), JA0075-76. Far from treating the disqualification requirement as a mere discretionary factor, EPA Br. 17, 29, EPA has applied it as mandatory to remove grant recipients from its committees. FAC ¶¶ 57, 108, JA0058, 0071; Zarba Decl. ¶¶ 23-24, JA0124; McConnell Decl. ¶¶ 15, 19, JA0178-79.

### C. The Directive Contravenes the Uniformity Requirement of Federal Ethics Law.

#### a) The Ethics Rules Apply Uniformly.

EPA makes the conclusory statement that the ethics rules establish a floor rather than a uniform set of standards, citing the district court order and nothing else. *See* EPA Br. 28. This assertion is contradicted by numerous authorities that EPA fails to address, including the ethics statutes and regulations themselves, as well as the Ethics Office's authoritative interpretation of these authorities. *See* Opening Br. 9-11, 30-33.

The ethics statutes were written to "promote and balance the dual objectives of protecting government integrity and facilitating the Government's recruitment and retention of needed personnel." S. Rep. No. 87-2213, at 7 (1962), *as reprinted in* 1962 U.S.C.C.A.N. 3852, 3856. As the Attorney General explained at the time, previous requirements were considered "unnecessarily severe" and "imped[ed] the departments and agencies in the recruitment of experts for important work." Dep't of Justice, Memorandum Regarding Conflict of Interest Provisions of Public Law 87-849, 28 Fed. Reg. 985 (Feb. 1, 1963), JA0209. Congress accordingly imposed liability for violations of conflict-of-interest requirements, but also directed the Ethics Office to define the types of interests that would <u>not</u> create a conflict. *See* 18 U.S.C. § 208(a), (d)(2)(B). And in addition to 18 U.S.C. § 208, Congress enacted 5 U.S.C. App. 4 § 402, instructing the Ethics Office to develop rules and

regulations "pertaining to conflicts of interest and ethics in the executive branch," provide "overall direction of executive branch policies related to preventing conflicts of interest on the part of officers and employees of any executive agency," and evaluate other agencies' regulations to ensure "consisten[cy]." 5 U.S.C. App. 4 § 402(a), (b)(1), (b)(12). Pursuant to that mandate, the Ethics Office promulgated "uniform standards of ethical conduct," as well as rules to implement them. 57 Fed. Reg. 35,006, 35,006 (Aug. 7, 1992), JA0219.

The ethics rules operate not as a "floor," but as a "uniform" set of standards from which agencies cannot deviate. *See Black's Law Dictionary* 1564 (8th ed. 2004) (defining "uniform" as "[c]haracterized by a lack of variation; identical or consistent"); *Oxford English Dictionary* 3440 (6th ed. 2007) (defining "uniform" as "conforming to one standard, rule, or pattern"). In fact, the Ethics Office expressly rejected a proposal to issue ethical standards that would serve as only a "floor" because a floor would not "set[] uniform ethical standards." 57 Fed. Reg. at 35,009-10, JA0220-21. In insisting otherwise, EPA fails even to acknowledge that its position contradicts the Ethics Office's authoritative view of its own statutory mandate and regulations.

As further evidence that the ethics rules demand uniformity, agencies may not issue rules that are inconsistent with the Ethics Office standards. 5 C.F.R. § 2638.602. Even supplemental rules that are consistent with the uniform ethics

rules cannot be issued unless the Ethics Office reviews and approves them, providing a safeguard against measures that would infringe on uniformity. *Id.* § 2635.105.

**b) The Directive Addresses Conduct and Subject Matter Covered by the Uniform Ethics Rules.**

Contrary to EPA's assertion that the Directive is "independent of the federal ethics regime," EPA Br. 27, the Directive and the uniform ethics rules both govern appointment decisions and regulate special government employee conduct, yet reach different results. The uniform ethics rules apply to the special government employees on EPA's advisory committees, and Committee Act regulations confirm that EPA must "apply Federal ethics rules" in making appointments. Opening Br. 11-12. EPA's longstanding practice has accordingly been to conform its appointment policies to the uniform rules by allowing scientists who receive EPA grant funding to serve. *Id.* 14-15. By creating a new ethics requirement for appointments, the Directive intrudes into the domain of the uniform ethics rules and contradicts them.[1]

[1] EPA correctly observes that agency heads may set "policies and procedures" governing advisory committee appointments, but fails to note that the same regulation expressly preserves the limits on this authority, 41 C.F.R. part 102-3, subpt. C, App. A, ¶ I. Thus those appointment policies and procedures must comply with the Committee Act and its implementing regulations, which expressly incorporate the uniform ethics rules.

EPA also argues that the Directive is not a departure from the ethics rules simply because it threatens no civil or criminal penalties. This argument ignores that the ethics statutes and regulations not only establish safe harbors from civil and criminal liability, but also substantive standards of ethical conduct applicable to all executive branch employees. Opening Br. 9-10 (citing 5 C.F.R. § 2635). As the Department of Justice (still) acknowledges on its website, the standards of ethical conduct "replaced the many individual agency standard of conduct regulations with a uniform set of standards applicable to all employees of the executive branch." *Id.*

EPA argues that the Directive does not "regulate[] employee conduct," EPA Br. 17, but fails to address Scientists' well-pleaded allegations to the contrary, or the legal memorandum issued with the Directive, which directs committee members to "avoid financial entanglements with EPA." Opening Br. 35-37. Further, whether the prohibition on service by grant recipients is stated as an obligation on the agency or on committee members is irrelevant, because the effect either way is that scientists must forgo EPA grant funding, or face dismissal. And dismissal is among the sanctions that can be imposed for violations of ethics rules. 5 U.S.C. App. 4 § 402(f)(2)(A)(ii)(I); 5 C.F.R. §§ 2635.106(a), 2635.102(g) ("disciplinary action" includes "removal.").

EPA contends that the Directive does not "purport to impose sanctions." EPA Br. 30. But the Directive alters the substantive ethical requirements to which committee members must conform their conduct, and results in dismissal. Whether EPA chooses to call dismissal a "sanction" is of no moment.

**c) This Case Challenges an Across-the-Board Disqualification, Not Individual Advisory Committee Appointments.**

EPA offers the unremarkable proposition that the ethics rules do not require the Administrator to appoint anyone in particular. But Scientists do not challenge any appointment decisions or the composition of any advisory committee, and do not argue that the ethics rules dictate whom EPA must appoint.[2] Rather, Scientists bring a facial challenge to EPA's adoption of an across-the-board disqualification.

Nor do Scientists dispute that the Administrator has discretion to appoint and remove individual committee members. However, it is equally plain that he is constrained in doing so by applicable law, including the uniform ethics rules. Opening Br. 26-27, 38. EPA lacks the authority to disqualify an entire class of experts on the grounds of an alleged ethical conflict that, under the uniform ethics

[2] EPA mischaracterizes the position that Scientists took at oral argument. EPA Br. 31. As the hearing transcript shows, Scientists merely stated that EPA could decide to appoint an expert who does not receive grants rather than one who does, confirming that Scientists have never argued that the ethics rules determine whom EPA must appoint. Transcript 36-38 (Dec. 7, 2018), JA0193-95. Scientists did not state, as EPA suggests, that EPA may base its appointment decisions—in whole or in part—on a conclusion that grant funding creates an ethical problem.

rules that bind EPA, poses no ethical conflict. *See* 5 C.F.R. §§ 2635.402(a), 2640.203(g).[3]

Finally, EPA's observation that the Directive does not purport to amend the code of conduct for EPA employees (EPA Br. 30) is irrelevant. Scientists do not argue that the Directive on its face amends the code of conduct, and EPA provides no support for the notion that agencies must comply with the uniform ethics standards only when they purport to formally amend them. The relevant question is whether the Directive is contrary to the code of conduct developed by the Ethics Office at Congress's direction, and as discussed, it is.

## II. THE DIRECTIVE IS PROCEDURALLY DEFECTIVE.

By conceding that the Directive addresses alleged "conflict-of-interest concerns," Opening Br. 47-48, EPA confirms that the Directive had to be issued in compliance with Ethics Office regulations that apply when agencies impose "ethics related" requirements. Legal Advisory 11-07 2-3; 5 C.F.R. §§ 2638.602, 2635.105. EPA argues that the Directive did not need to be submitted to the Ethics Office

---

[3] EPA seeks to compare the Directive to a Presidential Memorandum, "Lobbyists on Agency Boards and Commissions." 75 Fed. Reg. 35,955 (June 18, 2010), JA0231; EPA Br. 29 n.5. Although that memorandum was challenged on other grounds in *Autor v. Pritzker*, 843 F.3d 994, 996 (D.C. Cir. 2016), EPA does not claim that it was challenged for conflicting with federal ethics rules. Furthermore, the President has statutory authority to issue regulations governing employee conduct that EPA does not, *e.g.*, 5 U.S.C. § 7301, and Presidential orders are more likely to be consistent with the requirement of executive-branch uniformity at the heart of this case.

because it merely establishes discretionary "priorities," not a binding requirement, and argues that a regulation prevents judicial review of EPA's compliance with these regulations. EPA Br. 33-36. But neither argument has merit.

The argument that the Directive only establishes discretionary priorities is contradicted by the Directive itself, the accompanying Memorandum, and the well-pleaded allegations of Scientists' complaint. *Supra* 5, 9. EPA also hints at a related argument that the Directive is exempt from the Ethics Office procedures as "ethics-related practice or advice." EPA Br. 33-34 (quoting LA-11-07). But the Legal Advisory makes clear that "ethics-related practice or advice" refers to advising employees to do something "voluntarily as a best practice." LA-11-07 2. The Advisory actually contrasts such "advice" with agency policies that—like the Directive—impose ethics-related requirements, and makes clear that requirements must be issued as supplemental ethics regulations. *Id.*

EPA also argues that a regulation prevents judicial review of EPA's violation of these procedural requirements, but fails entirely to address this Court's holding that regulations cannot preclude review under the Administrative Procedure Act ("APA") absent "clear and convincing evidence that Congress intended to foreclose judicial review." *Ball, Ball & Brosamer v. Reich*, 24 F.3d 1447, 1450-51 (D.C. Cir. 1994) (internal quotation marks omitted). Because EPA neither addresses this controlling case, nor attempts to identify clear and

convincing evidence of Congressional intent to authorize the Ethics Office to preclude APA review, the "basic presumption" in favor of APA review holds here. *Id.*

In a footnote, EPA claims incorrectly that *De Jesus Ramirez v. Reich*—another controlling case—"assume[d]" that judicial review was available of whether the Department of Labor had acted arbitrarily. EPA Br. 35 n.7. In fact, *De Jesus Ramirez* held that judicial review was available based on the rule that "only statutes, not agency regulations," can preclude review. 156 F.3d 1273, 1276 (D.C. Cir. 1998). EPA's argument that nothing in *De Jesus Ramirez* "turned on the content of agency regulations" actually confirms this point: the reason nothing turned on the content of the regulations is that regulations, no matter their content, cannot prevent APA review when a statute does not evince clear Congressional intent to preclude review. EPA Br. 35 n.7; *accord Ball, Ball & Brosamer*, 24 F.3d at 1450-51.

Faced with precedent barring agencies from precluding judicial review by regulation, EPA repackages its preclusion argument as an argument that Scientists lack a "legal interest." EPA Br. 35. But Scientists' "legal interest" is conferred by the legally binding Ethics Office regulations—which EPA has violated—and the Administrative Procedure Act, which grants a cause of action to persons "suffering legal wrong because of agency action" taken "without observance of procedure

required by law." 5 U.S.C. § 702, 706. EPA cites no authority for the proposition that, in addition to their APA cause of action, EPA's violation of binding regulations, having standing, and being within the zone of interest of the Ethics Act, Scientists dismissed from EPA's advisory panels under the Directive must also show a further "legal interest," and there is no such authority. Worse, EPA's novel argument would, if accepted, empower federal agencies to eviscerate the presumption of judicial review and evade this Court's precedent establishing that agencies cannot preclude APA review absent clear statutory authorization.

EPA relies on cases that address the enforceability of executive orders, EPA Br. 34-35, but while various executive orders also pertain to the executive branch ethics program, here EPA has violated the procedural requirements established in binding regulations. 5 C.F.R. §§ 2638.602, 2635.105. These regulations were adopted by the Ethics Office pursuant to statutory authority, 46 Fed. Reg. 2582, 2583-84 (Jan. 9, 1981) (citing the Ethics in Government Act), JA0215-16; 57 Fed. Reg. at 35,006, JA0220 (citing the Ethics in Government Act and Ethics Reform Act), and undisputedly have the force of law. Cases dealing with executive orders are therefore inapposite.[4]

---

[4] One case on which EPA relies, *Helicopter Ass'n Int'l v. FAA*, 722 F.3d 430, 439 (D.C. Cir. 2013), involves a Department of Transportation order in addition to an executive order, but the agency order is not a binding regulation. DOT Order 2100.5 (May 22, 1980), https://www.regulationwriters.com/library/DOT2100-5.PDF.

Further, executive orders differ in important ways from agency regulations issued pursuant to statutory authority. While executive orders generally are not "subject to judicial review," and may lack the force of law, *Meyer v. Bush*, 981 F.2d 1288, 1296 n.8 (D.C. Cir. 1993), binding regulations adopted pursuant to Congressional authority are enforceable. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). Indeed, even an executive order can be judicially enforceable when, like these Ethics Office regulations, it has a "foundation in congressional action." *In re Surface Mining Regulation Litigation*, 627 F.2d 1346, 1357 (D.C. Cir. 1980) (citation omitted). Further, while the President has authority to adopt rules for the executive branch, *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 492-93 (2010), agencies possess only the authority conferred by Congress. *Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 8 (D.C. Cir. 2002). They therefore lack authority to countermand Congress's decision to authorize APA review of agency action taken without observance of required procedures. *Ball, Ball & Brosamer*, 24 F.3d at 1450-51.

In any event, the Court need not decide whether the Ethics Office can preclude judicial review by regulation, because the Directive also violates the prior approval requirement of § 2638.602. Review of EPA's violation of the prior approval requirement of part 2638 is not affected by § 2635.106(c), which by its plain terms is limited to violations of part 2635, and Scientists have not forfeited

this claim. To the contrary, Scientists have relied on both the prior approval requirement of § 2638.602 and the supplemental regulation requirements of § 2635.105 throughout this case, as evidenced by the express invocation of § 2638.602 in the complaint. FAC ¶ 87 ("An agency that wishes to promulgate ethics-related regulations . . . must obtain [the Ethics Office]'s 'prior approval.'") (quoting 5 C.F.R. § 2638.602); ¶ 162, JA0066, 0087. *See also id.* ¶ 135 (incorporating ¶ 87 in count II), JA0081. Further, Scientists' opposition to EPA's motion to dismiss expressly argued that the scope of any preclusive effect from § 2635.106(c) is limited to enforcement of "the ethical standards contained in Part 2635" and thus does not affect the enforcement of "procedural requirements" that are binding on EPA. Opp. 44, JA0102. Those procedural requirements include the prior approval requirement of § 2638.602. FAC ¶¶ 87, 162, JA0066, 0087. *See also* Opp. 7 (citing LA-11-07 as additional support for the prior approval requirement), JA0290.[5] EPA's attempt to insulate its violation of the prior approval requirement from review therefore fails.

[5] EPA is incorrect (EPA Br. 36) that 5 C.F.R. § 2638.602 "simply restates" the provisions of part 2635. Section 2638.602 requires that agencies obtain the Ethics Office's "prior approval" to issue regulations, a requirement that does not appear in part 2635. Even if this prior approval requirement appeared in both parts, there still would be no basis to read 5 C.F.R. § 2635.106(c) to preclude review of a violation of part 2638.

## III. THE DIRECTIVE IS ARBITRARY AND CAPRICIOUS.

### A. EPA Failed to Consider The Uniform Ethics Rules.

EPA does not claim that it even considered that the Ethics Office's uniform standards establish that receipt of agency grants should not disqualify scientists from advisory committee service. Opening Br. 46-47. The Directive and accompanying Memorandum evince no understanding that the Ethics Office—the Congressionally-designated expert agency in matters of ethics—has concluded that ethical concerns in this context are "too remote or too inconsequential" to merit disqualification. Opening Br. 29-30. Further, while EPA avers generally that the Directive is "reasonable," EPA Br. 41, EPA does not dispute, or even address, Scientists' argument that the Ethics Office's expert determination is a "relevant factor" that EPA should at least have considered before reaching a contrary conclusion in the Directive. Opening Br. 46-47 (citing cases). EPA's failure to respond to this argument confirms that the Directive is arbitrary and capricious.

### B. EPA Failed to Consider The Risk that Barring EPA Grantees Will Impair Its Ability to Recruit Needed Expertise.

EPA claims that the Directive considers the likely effect of the Directive on the agency's ability to recruit the most qualified scientific experts and determines that disqualifying all EPA grantees is "consistent" with that important objective. EPA Br. 44. This is false. While the Directive reaffirms that recruiting the best scientists is important, it makes no claim that barring EPA's grantees is consistent

with that objective. If the Directive really did "make[] clear" that barring EPA grantees is "consistent" with the important goal of recruiting the best scientists, *id.*, EPA would be able to point the Court to the place in the record where such a claim appears. It cannot because EPA never made any such claim. Nor does the Directive provide any reasoning or explanation in support of that non-existent claim. This is arbitrary. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (agency action that "fail[s] to consider an important aspect of the problem" is arbitrary).

EPA also relies on the district court's factual finding that the scientists that remain eligible under the Directive are "capable of conducting the scientific decision-making EPA needs," EPA Br. 44 (quoting Mem. Op. 25, JA0066). The agency itself never made this claim, and the district court's factual finding is not grounded in the administrative record. Yet EPA appears to argue that the district court is empowered to make factual findings on the basis of the court's own views, and grant a motion to dismiss on that basis, so long as the finding is not contrary to allegations in the complaint. EPA Br. 44 & n.10.

The first problem with EPA's argument is that the district court's factual finding <u>is</u> contrary to the allegations in the complaint, and also contrary to reasonable inferences that are required to be drawn in Scientists' favor in deciding a motion to dismiss. Scientists allege that disqualifying grantees "deprive[s EPA]

of expertise on critical issues" and "undermin[es] the operations of important EPA advisory committees," FAC ¶¶ 120, 122, JA0076-78. This is because "scientists involved in conducting EPA-funded research are often the most qualified scientists in terms of subject-matter expertise in a given area," *id.* ¶ 158, JA0086-87. Scientists support these allegations with sworn declarations, including one from the former Director of the EPA office that manages several important scientific advisory committees, who explains, in direct contradiction of the district court's finding, that "shrink[ing] the recruiting pool" of available experts "has seriously damaged the ability of EPA to attract and appoint qualified scientists," which in turn "will inevitably compromise the quality of" the committees. Zarba Decl. ¶ 26, JA0124-25.

The second and more fundamental problem with EPA's argument is that dismissal based on the district court's own conviction that Scientists are mistaken, untethered to the adminstrative record, contravenes basic principles of administrative law. Judicial review of agency action should focus on "the administrative record already in existence," *Camp v. Pitts*, 411 U.S. 138, 142 (1973), not new fact-finding by the district court. *See also* 5 U.S.C. § 706. And it is error to uphold agency action based on "reasoning that appears nowhere in the agency's order." *PanAmSat Corp. v. FCC*, 198 F.3d 890, 897 (D.C. Cir. 1999)

(cleaned up).[6]

### C. EPA Failed to Acknowledge or Explain the Reversal of its Longstanding Policy.

EPA also acted arbitrarily by failing to acknowledge that it was reversing its own longstanding policy of heeding the uniform ethics rules and viewing EPA grantees as eligible and especially well-qualified to serve on the agency's scientific advisory committees, and failing to explain the reversal. EPA asserts that the Directive's claim that it would "strengthen and improve" the advisory committees is sufficient acknowledgement. EPA Br. 42-43. But it is not enough under this Court's precedent merely to announce a new policy and its alleged benefits. An agency that is reversing its longstanding policy must acknowledge the reversal. *CBS Corp. v. FCC*, 785 F.3d 699, 709 (D.C. Cir. 2015) (agency must "acknowledge[]" that new rule "departs from longstanding practice").

---

[6] EPA disputes that recent extra-record information shows a decline in the expertise of EPA's scientific advisory committees. EPA argues that a GAO report shows they retain "substantial representation" from academic scientists, EPA Br. 44 n.10, but does not deny that the report shows academic representation has declined dramatically—by 27 percent on the Science Advisory Board and 45 percent on the Board of Scientific Counselors. U.S. Government Accountability Office, EPA Advisory Committees: Improvements Needed for the Member Appointment Process 22-25 (July 2019), https://www.gao.gov/assets/710/700171.pdf, JA0283-86. EPA claims that the decline in the expertise of the Clean Air Scientific Advisory Committee is attributable to EPA's decision to disband expert subpanels, EPA Br. 45-46, but the two causes are not mutually exclusive. Many top experts on the subpanels were disqualified by the Directive before they were disbanded. *See* McConnell Decl. ¶ 22, JA0180.

EPA attempts to distinguish *CBS Corp.* on its facts, EPA Br. 42 n.9, including that the relevant discussion there appeared in the 36th paragraph of the agency's order, but *CBS Corp.* turned on the agency's failure to acknowledge its reversal of its prior position, not where in the decision document the inadequate discussion appeared. 785 F.3d at 709. In any event, many decisions of this Court, in addition to *CBS Corp.*, establish that an agency must acknowledge its prior policy when it reverses course. Thus, in *Williams Gas Processing-Gulf Coast Co., L.P. v. FERC*, 475 F.3d 319, 329 (D.C. Cir. 2006), the Court held the agency's decision arbitrary for failing to "openly acknowledg[e] its intention to reverse course" and failing "to come to terms with its own precedent." In *Shieldalloy Metallurgical Corp. v. Nuclear Regulatory Comm'n*, 707 F.3d 371, 382 (D.C. Cir. 2013), this Court rejected as arbitrary the agency's "failure to grapple with the past."

Under these precedents, it is not enough that the reversal of a prior policy is somehow implicit in the announcement of a new approach. *See* EPA Br. 42-43. To meet the test of reasoned decisionmaking, this Court requires "explicit recognition . . . that the standard has been changed," *Hatch v. FERC*, 654 F.2d 825, 834 (D.C. Cir. 1981), not mere "gloss[ing] over" the conflicting prior policy. *Williams Gas*, 475 F.3d at 329. By failing to mention its prior policy of viewing EPA grantees as both eligible and particularly well-qualified to serve on federal advisory

committees, and even suggesting that its existing policies were silent on this question, Opening Br. 51, EPA acted arbitrarily.

Further, EPA never offered an explanation—never mind a reasoned explanation—for reversing course. Scientists do not argue that the mere fact of a policy change demands "more searching review," as EPA suggests, EPA Br. 43, but simply that EPA must provide "a reasoned explanation" "for disregarding facts and circumstances that underlay . . . the prior policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514-16 (2009). Here EPA arbitrarily failed to reconcile the Directive with its own longstanding adherence to the Ethics Office rules or its own position that disqualifying agency grantees would exclude many of the scientists most qualified to advise the agency on the specialized scientific and technical questions that arise in the agency's work.

Rather than address these failures, EPA's lawyers adduce additional rationales for the Directive. EPA Br. 46-48. Because these new rationales do not appear in the agency decision, they do not furnish a basis to uphold the Directive. *State Farm*, 463 U.S. at 50. First, EPA's lawyers cite an Inspector General report that ironically endorses EPA's prior approach in concluding that receipt of a grant poses no financial conflict of interest so long as grantees do not advise on their own work. EPA Office of Inspector Gen., EPA Can Better Document Resolution of Ethics and Partiality Concerns in Managing Clean Air Federal Advisory

Committees 9-10 (Sept. 11, 2013), JA0204-05. Then, relying on the legislative history of an appropriations act and on an unenacted House bill, EPA's lawyers claim that EPA permissibly acted on conflict-of-interest concerns "raised by Congress." EPA Br. 47-48. The legislative history merely asked EPA to evaluate whether grant funding could create bias; it did not determine that it does, nor that grants should be disqualifying. 161 Cong. Rec. H10,161, H10,220 (daily ed. Dec. 17, 2015), JA0201. And the House bill is just a bill. Furthermore, merely invoking concerns raised in the political process does not excuse an agency's failure to engage in reasoned decisionmaking. Unlike political actors, who may reach political conclusions for any reason or no reason, agencies have an obligation to acknowledge and provide a rational explanation for changing their position, which EPA failed to do here.

## IV. THE DIRECTIVE IS REVIEWABLE.

While the parties may dispute whether the Directive conflicts with the ethics rules, this dispute is one courts are well-equipped to resolve. Indeed, the district court decided the merits of Scientists' claims that the Directive violates the ethics laws and regulations and marks an unexplained reversal of past EPA policies, and EPA argues the merits of those claims before this Court. EPA nonetheless invokes the APA's exception to judicial review for matters committed to unreviewable agency discretion. In doing so, it deviates from Supreme Court precedent and

misstates Scientists' arguments.

Under Supreme Court precedent, the narrow and rare APA reviewability exception for actions "committed to agency discretion by law" applies only when: (1) the matter is traditionally committed to unreviewable discretion; <u>and</u> (2) Congress has not constrained that discretion by statute. Thus in *Lincoln v. Vigil*, 508 U.S. 182, 191, 193 (1993), the Court deemed allocating a lump-sum appropriation to be "peculiarly" within the agency's unreviewable discretion. However, the Court noted that Congress can circumscribe an agency's discretion by specifying the allocation, instead of granting a lump-sum appropriation, *id*. at 193, just as Congress could constrain the CIA Director's discretion to terminate agents by creating statutory limitations, *Webster v. Doe*, 486 U.S. 592 (1988) (termination unreviewable under the statute's broad grant of discretion), or could limit an agency's authority not to initiate enforcement actions. *Heckler v. Chaney*, 470 U.S. 821, 833-34 (1985); *Dunlop v. Bachowski*, 421 U.S. 560 (1975) (statute supplied standards for court to apply in reviewing agency's decision not to initiate enforcement action). Thus, it is black letter law that statutes that constrain agency discretion provide meaningful standards for courts to apply. EPA recognizes as much in quoting *Lincoln*'s admonition that: "Of course, an agency is not free simply to disregard statutory responsibilities." EPA Br. 21 (quoting *Lincoln*, 508 U.S. at 193).

The Court most recently addressed the interplay between discretion and statutory constraints in *Department of Commerce v. New York*, 139 S. Ct. 2551, 2566, 2568 (2019), which challenged the Secretary of Commerce's addition of a citizenship question to the census. The Court observed that the Constitution gives Congress broad discretion in designing the census, which Congress has delegated to the Secretary by directing him to conduct a decennial census in "such form and content as he may determine." However, because the controlling statute established some requirements, the courts could review the Secretary's census decisions under APA's arbitrary, capricious, and abuse of discretion standard. *Id*. at 2569-71, 2573-76.

*Department of Commerce* requires the same result here. EPA may have broad discretion in deciding whom to appoint to its advisory committees and to balance a range of complicated factors in doing so. That discretion ends, however, where Congress has stepped in and imposed constraints, as Congress has done through the Ethics Act and the Committee Act. The Ethics Act entrusts the Ethics Office, not EPA, with branch-wide authority in matters of ethics, including authority to promulgate binding regulations that constrain agencies like EPA. And the Committee Act constrains EPA's discretion by granting authority to the General Services Administration to adopt implementing regulations that bind EPA and other agencies. 5 U.S.C. App. 2 § 7(c). These regulations require EPA to

comply with uniform ethics rules in reviewing prospective advisory committee members, making appointments, and ensuring independence of the advisory committees. Opening Br. 11-12. Indeed, the district court applied these regulations in ruling on the merits of Scientists' claims that the Directive conflicts with substantive and procedural requirements. And EPA acknowledges that procedural requirements imposed by the Committee Act and its regulations are judicially enforceable, EPA Br. 22, but sidesteps the requirement to adhere to the conflict-of-interest rules in making advisory committee appointments.

Scientists claim that EPA's new blanket disqualification of EPA grantees from serving on its advisory committees violated these constraints. This policy adopts an across-the-board disqualification rule that Scientists claim violates constraints imposed under these statutes and regulations. EPA retains the ability to balance complicated factors in making individual appointment decision as long as it adheres to the statutes and regulations that constrain its discretion and provide meaningful standards for judicial review. But it is the province of the courts to determine whether the Directive adheres to or runs afoul of the controlling good government statutes and regulations.

The district court and EPA likewise acknowledge that the courts can review EPA's appointments for violations of specific directives to appoint members with sufficient expertise. Mem. Op. 25, JA0036; EPA Br. 25-26. Accordingly, the

statutes that require EPA to take account of expertise in managing its scientific advisory committees also provide meaningful standards to review EPA's membership policies for arbitrariness. *See Department of Commerce*, 139 S. Ct. at 2568-69; Opening Br. 48-49. In implementing these statutes, EPA has long taken the position that scientists conducting cutting-edge research under EPA grants are among the most qualified to render advice on the scientific issues facing the agency, and therefore should not be excluded. In reversing itself, EPA has diminished the pool of qualified scientists eligible to serve, which courts can review to determine whether EPA has rationally considered the risk that this will impair recruitment of necessary expertise.

EPA devotes much of its brief to two non-arguments. First, it urges the Court to hold that compliance with the Committee Act's balanced membership provisions is unreviewable and adopt the concurrence in *Public Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*, 886 F.2d 419, 426-29 (D.C. Cir. 1989). EPA Br. 22-25. Because Scientists expressly do not challenge the composition of any advisory committee, or any appointment decisions, the district court did not need to reach this issue, it is not presented on this appeal, and it is inaccurate to present it as undisputed, as EPA does, *see* EPA Br. 25.

Second, contrary to EPA's assertion, Scientists have never argued that arbitrary and capricious review is available where the decision is committed to

agency discretion under 5 U.S.C. § 701(a)(2). EPA Br. 36-40. Scientists accept that APA review is unavailable, including under the arbitrary and capricious standard, if a matter falls within the committed to agency discretion by law exception. The converse is also true. If the Directive is not committed to agency discretion by law—because the uniform ethics rules, the statutes and regulations requiring EPA compliance with them, and the statutory and regulatory provisions pertaining to expertise constrain EPA's discretion and provide meaningful judicial standards—then APA review is available.

As evidenced by the district court's ruling on the merits, Scientists' claim is not a free-standing arbitrary and capricious claim, but one tethered to binding regulations that EPA previously followed and recently decided to contravene. Scientists' claim that EPA arbitrarily considered—or failed to consider—the relevant factors established by these statutes and regulations is a familiar, and reviewable, administrative law claim. *See Weyerhaueser, Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 371 (2018).

## CONCLUSION

The Court should reverse the decision of the district court and remand with instructions to vacate the Directive and grant other appropriate relief.

DATED: December 18, 2019

Respectfully submitted,

/s/ Michael Burger (w/permission)
Michael Burger
Special Counsel
Columbia Environmental Law Clinic
Morningside Heights Legal Services
435 W. 116th St.
New York, NY 10027
(212) 854-2374
mburger@law.columbia.org

*Counsel for Appellants Joe Árvai and Robyn Wilson*

/s/ Neil Gormley
Neil Gormley
Tosh Sagar
Earthjustice
1625 Massachusetts Ave., NW
Suite 702
Washington, DC 20036-2243
(202) 667-4500
ngormley@earthjustice.org
tsagar@earthjustice.org

Patti Goldman
Earthjustice
705 Second Avenue
Suite 203
Seattle, WA 98104
(206) 343-7340
pgoldman@earthjustice.org

*Counsel for Appellants Physicians for Social Responsibility, National Hispanic Medical Association, International Society for Children's Health and the Environment, and Edward Lawrence Avol*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Counsel hereby certifies, in accordance with Federal Rules of Appellate Procedure 32(g)(1) and 32(a)(7)(B)(ii), that the foregoing **Final Reply Brief Of Appellants** contains 6,492 words, as counted by counsel's word processing system, and thus complies with the 6,500 word limit.

Further, this document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) & (a)(6) because this document has been prepared in a proportionally spaced typeface using **Microsoft Word 2016** using **size 14 Times New Roman** font.

DATED: December 18, 2019

/s/ Neil Gormley
Neil Gormley

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of December, 2019, I have served the foregoing **Final Reply Brief Of Appellants** on all registered counsel through the Court's electronic filing system (ECF).

/s/ Neil Gormley
Neil Gormley